IN THE MATTER OF THE ESTATE OF JEAN GARRAUD, DECEASED.

PAROL EVIDENCE TO EXPLAIN WILL.—Under the provisions of section seventeen of the "Act concerning Wills," parol evidence is not admissible to show that a testator, who by his will devised his whole estate to his wife without mentioning his children therein, intentionally omitted to make any provision for his children, but to render an exclusion of the latter effectual, the evidence that the testator · intended to do so must be furnished by the will itself.

APPEAL from the Probate Court of the City and County of San Francisco.

The facts are stated in the opinion of the Court.

*Geo. B. Merrill,* for Appellant.

It is an old and well sustained principle that a will must be interpreted according to its language alone. That the intention of the testator must govern its interpretation, and that must be gathered from its expressions, and not from its omissions. (1 Redfield on Wills, 432, 433; *Doe* v. *Fyldes,* 1 Cowper, 840; *Strong* v. *Cumming,* 2 Burr. 770; *Baddeley* v. *Leppingwell,* 3 Burr. 1,541; *Evans* v. *Astlery,* 3 Burr. 1,581; *Ruston's Ex'rs* v. *Ruston,* 2 Dall. 244; *Comstock* v. *Hadlyme,* 8 Conn. 254.)

The effect of the admission of extrinsic evidence to set up an unwritten intention would be to disinherit the testator's children; and the disinheritance of one's children is not such an act as is done lightly and without an expression of an intention so to do, or of reason for such an act. (Co. Litt. 111 *b;* *Treat* v. *Hanning,* 7 East, 97; *Thomas* v. *Thomas,* 6 T. R. 671; *Moor* v. *Dean,* 2 Bos. & Pul. 243; *Hyatt* v. *Pugsley,* 25 Barb. 299; 2 Jarman on Wills, 525.)

The construction of a will is a question of law, and the Court cannot need instruction in determining such a question. The point to be decided may be really one of fact, but it is not a physical fact, to establish which other knowledge than that of principles of law is necessary. (Sedgw.

Stat. and Const. Law, 229, 241–243, *et seq.*; 2 Kent's Com. 556, and note *c*; Redfield on Wills, 501, 502, *et seq.*; *Nicholls* v. *Osborn*, 2 P. Wms. 420; *Brown* v. *Selwyn*, Talbot's Cases, 240 [Case 52]; *Ulrich* v. *Litchfield*, 2 Atk. 372; *Stephenson* v. *Heathcote*, 1 Eden, 38; Greenl. Cr., Title XXXVIII, Ch. 14, Sec. 13; *Britt* v. *Rigden*, Plow. 340; 2 Vern. 625; *Doe* d. *Gwillim* v. *Gwillim*, 5 B. & Adol. 129; *Richman* v. *Corstairs*, 5 B. & Adol. 663; *Templeman* v. *Martin*, 5 B. & Adol. 783; 1 Nev. & Mann. 524–567; *Doe* v. *Lancashire*, 5 T. R. 60; *Gibson* v. *Montford*, 1 Ves. 489; *Jackson* v. *Sill*, 11 Johns. 201; 1 Redfield on Wills, Part II, 539, 540, and cases cited.)

*Drake & Hent*, for Respondent.

The question to be decided involves the construction of a *statute*—not of *wills*, and of a statute as it *is* written, not *as it might be*.

As to the intent and meaning of the will of Jean Garraud there can be no doubt. His intention to disinherit his children is as clear as language can make it: "I give and bequeath to my beloved wife, Justine Garraud, *all* the real, personal, and mixed estate, of all kind and nature whatsoever, and wherever situate, I may die possessed of."

We need not hunt among ancient abridgments and reports for rules to apply to the construction of this will, for there is no room for the application of any rule, unless it be the universal rule, that a man intends what he says. As to a testator declaring in his will that he intentionally omitted to provide for his children, if he means to disinherit them, it might be well for the statute to so require—and certainly it would be the safest for him to do so; even then his intent might be defeated. But does the law as written require it? The decision of that question depends upon the construction of section seventeen of the Statute of Wills.

In every instance where in said statute the intention is from the nature of things susceptible of proof by both parol

and testamentary evidence, the Legislature has defined the *kind* of evidence, except in the solitary section seventeen. Was this exception by accident or design? It could not have been by accident or inadvertence, because in three preceding and two succeeding sections, and, indeed, in every section where the proof of intention is spoken of, and there are several kinds of proof, except in section seventeen, the Legislature industriously prescribe the kind of evidence. We are bound to believe that this section was as carefully considered as the others, and yet it at the very first glance shows that it admits all kinds of evidence of intention, unless some other portions of the statute should· qualify or modify its plain and undoubted meaning, standing by itself and unconnected. (*Wilson, Executor* v. *Foskett*, 6 Met. 400; see, also, *Payne* v. *Payne*, 18 Cal. 291.)


By the Court, CROCKETT, J. :

This is an appeal from an order of the Probate Court decreeing distribution of the estate of Jean Garraud, deceased.

The facts are, that Garraud died, leaving a widow and several minor children, and leaving also a last will and testament, which was duly probated, wherein he devised to his wife his whole estate, and appointed her sole executrix. He did not mention or make any reference whatever to his children in the will. When the executrix had made her final settlement, she filed a petition for distribution, claiming the whole estate as sole devisee under the will. The minors also appeared, and· contested her right, on the ground that not having been mentioned or referred to in the will, they were entitled, under section seventeen of the "Act concerning wills," to share in the distribution of the estate. This section of the Act is in the following words, to wit:

"When any testator shall omit to provide in his ·or her will for any of his or her children, or for the issue of any

deceased child, unless it shall appear that such omission was intentional, such child shall have the same share in the estate of the testator as if he or she had died intestate, to be assigned as provided in the preceding section."

On the trial the widow offered oral proofs tending to show that the omission of the testator to provide for his children was intentional. This testimony was objected to on behalf of the children; but the Court admitted the testimony, and ordered the whole estate to be distributed to the widow as sole devisee. The minors, having duly excepted to the ruling of the Court, have appealed from the order for distribution.

The sole question presented on the appeal is, whether the Court erred in admitting parol testimony as to the intention of the testator in omitting the children from the will, or whether the will alone is to be consulted.

The question is not free from doubt, and we are not aware that it has ever been passed upon by this Court.

The next preceding section of the Act provides for children born after the making of the will, and enacts that if the will makes no provision for such children they shall have the same share in the estate as if the testator had died intestate, "unless it shall be apparent *from the will* that it was the intention of the testator that no provision should be made for such child." Section twenty-one provides that "every devise of land in any will shall be construed to convey all the estate of the devisor therein which he could lawfully devise, unless it shall clearly appear *by the will* that he intended to convey a less estate." Section twenty-two provides that "any estate, right, or interest in lands acquired by the testator after the making of his or her will, shall pass thereby, and in like manner as if it passed at the time of making the will, if such shall manifestly appear *by the will* to have been the intention of the testator." Section twelve provides that "if after the making of any will the testator shall marry, and the wife shall be living at the death of the testator, such will shall be

deemed revoked, unless provision shall have been made for her by marriage contract, or unless she shall be provided for in the will, *or in such way mentioned therein* as to show an intention not to make such provision, and *no other evidence to rebut the presumption of revocation shall be received.*" The italics in these quotations are ours. It is claimed on behalf of the widow that in all these sections, *except section seventeen*, the will itself is specifically referred to as the only criterion by which the intention of the testator is to be ascertained; and that inasmuch as section seventeen omits the reference to the will as affording the *only* proof of the testator's intention, and provides for the children, "unless it shall appear that such omission was intentional," without specifying in what manner it shall be made to appear, the presumption is that in section seventeen the reference to the will was omitted *ex industria*, leaving the fact of the testator's intention to omit his children open to be established by proofs *dehors* the will. The argument is plausible, but we think is not sound.

It may be stated as a general proposition, not open to controversy, that wills, like other written instruments, cannot be varied, altered, added to, or contradicted by parol evidence. Without referring to numerous English cases, it is sufficient on this point to cite the following decisions of American Courts: *Jackson* v. *Sill*, 11 Johns. 201; *Mann* v. *Mann*, 1 Johns. Ch. 231; same case, 14 Johns. 1; *Avery* v. *Chappel*, 6 Conn. 270; *Bradley* v. *Bradley*, 24 Mo. 311; *Rothmahler* v. *Myers*, 4 Dessau, 215. See, also, 1 Jarman on Wills, 350; 1 Greenl. Ev. Sec. 290; 1 Redfield on Wills, 539, 540.

In the case we are considering, it is proposed to show by parol that the testator intentionally omitted to provide for his children. In other words, to show the testator's intention, not by appealing to his will, but by proving his acts or declarations before or at the time he made the will. In *Jackson* v. *Sill* the same effort was made. It was proposed to show that the testator intended to include, in a specific

devise, a certain tract of land, and that he so instructed the attorney who wrote the will, but the attorney, by mistake or inadvertence, omitted to include it. But the Court held that the will must speak for itself, and that parol evidence of the testator's intention was inadmissible. Numerous authorities to the same effect are found in the books.

Indeed, we do not understand the counsel for the respondent to deny that this was the common law rule. But he rests the case wholly on the statute, and on a Massachusetts case, which we will notice hereafter. In construing the statute, we assume that the Legislature was familiar with the common law rule above referred to; and there is no reason to infer that it intended to relax it. On the contrary, the whole Act relating to wills evinces the vigilance with which it was intended to guard and protect from fraud the most solemn act of the testator's life. To this end the Act provides (section seven) that a nuncupative will shall only be valid when the estate bequeathed does not exceed five hundred dollars; nor unless the same be proved by two witnesses, and that the testator at the time requested some one present to bear witness that it was his will; nor unless it was made in his last sickness and at the dwelling place of the deceased, unless he died from home; nor unless the will was reduced to writing within thirty days and proved within six months. (Section 8.) The statute contains minute provisions as to the mode of executing or revoking a will, and prohibits a married woman from making or revoking a will without the consent of her husband, to be annexed to the will or revocation, and to be attested and proved by two witnesses, unless the wife has power to make a will conferred upon her by a marriage contract or authority in writing executed by the husband before marriage.

These provisions exhibit the intention of the Legislature not only to adhere to the safeguards which the common law provided as a protection against fraud, but rather to increase and strengthen them by new enactments.

With this view, nothing short of an explicit enactment,

leaving no room for construction, would lead us to the conclusion that the Legislature intended to substitute for the written will, as the exponent of the testator's intentions, the loose and always uncertain evidence of acts and declarations resting in parol, and which are liable to be perverted by the frail memories, obtuse understandings, or fraudulent motives of persons called to testify after the death of the testator. Parol proof of admissions is the most unsatisfactory of all evidence, even against the living, and should always be received most cautiously in respect to the affairs of a deceased person, no longer capable of explaining his acts.

The argument founded on the other sections of the Act confirms rather than weakens the views we have expressed. When the will is so often referred to as affording the only evidence of the testator's intentions, it is incredible that the Legislature designed in the seventeenth section to make the omission to name the children in the will an exception to the general rule, and to allow parol proof in that particular excepted case. There could be no just ground for such an exception, founded either on reason or public policy; and we are by no means inclined to favor a construction the tendency of which would be to disinherit minor children on proof that the testator orally declared intentions and purposes which do not appear in his will.

But the case of *Wilson, Executor* v. *Foskett*, 6 Met. 400, is cited as an authority in point to support the views of respondent's counsel. The Masaachusetts statute differs very materially from ours, and the concluding-clause is as follows, to wit: "Unless it shall appear that such omission was intentional, and not occasioned by any mistake or accident." The last part of the clause is not found in our Act, and we think is the key to the decision in *Wilson* v. *Foskett*. It opens the door for proof on the question whether or not the omission resulted from mistake or accident.

It could not well appear from the will itself that a mistake had been committed, nor that accident had caused the testator to omit his children. Hence, when the statute provides

for proof on these subjects, it is necessarily implied that evidence *dehors* the will would be admissible.  It also appears that by an earlier statute it was provided that a child or grandchild not having a legacy given him in the will of his parent or grandparent, should have his proportion of the estate of the testator assigned him, as though the testator had died intestate; provided, such child or grandchild had not had an equal portion of the estate bestowed on him in the lifetime of the testator.

In construing this statute, the Supreme Court of Massachusetts held that to debar the child who was omitted from a distributive share of the estate, it must appear from the will itself that the testator intentionally omitted to give a legacy to the child.  (*Wilder* v. *Goss*, 14 Mass. 357; *Tucker* v. *Boston*, 18 Pick. 162.)  The subsequent statute, which was considered in *Wilson* v. *Foskett*, was materially different in its provisions, and the modification which it affected was probably induced by the construction put by the Courts on the former Act.  Considering the very material variance between the Massachusetts statute and our own, we do not consider *Wilson* v. *Foskett* as contravening our views.

Judgment reversed, and cause remanded for further proceedings in accordance with this opinion.